Mr. Englert, you can see and hear us all right, and you're going to go for six minutes and then three minutes in rebuttal, and then Mr. Kelly, you're going to go three minutes and no rebuttal. Mr. Kelly? Yes, Your Honor, that's correct. Okay, good. I can see you and hear you clearly, so that's good. And then for the appellee, we've got Mr. Bocuzzi. Good morning, Your Honor. Am I pronouncing your name right? Bocuzzi. Bocuzzi. All right. Thank you. Thank you. And you're going to go for seven minutes, and then Mr. Fisher for five minutes. Is that right? That's correct, Your Honor. Good morning. Good morning, Mr. Fisher, and you're nice and loud and clear, and we can see you. So good. All right, Mr. Englert, you've got six minutes out of the gate. Thank you, Your Honor. May it please the Court. Decades of consistent authority in bankruptcy cases hold that good faith is an affirmative defense to fraudulent conveyance actions, that the burden is on defendant rather than plaintiff's plea good faith, and that good faith is absent when the defendant was on inquiry notice but did not conduct a diligent investigation. Every circuit that has addressed either issue has agreed with those conclusions, and this Court itself has treated them as settled law. The Court below held that everything is different in a SIPA case when a trustee like my client is going after stolen customer property. Defendants barely try to defend that reasoning, but I'll address it briefly, and then I'll turn to defendant's alternative grounds for affirmance, which are, if anything, even more problematic. The text of SIPA is clear. The Bankruptcy Code's relevant provisions are incorporated except to the extent of any conflict with SIPA itself. SIPA is made part of the Exchange Act except to the extent of any conflict with SIPA itself. Nowhere does SIPA hint that a provision of the securities law may be used to alter the operation of a provision of the Bankruptcy Code. What's more, as Judge Sachs said in a footnote in the recent Gettinger decision, it is not the design of SIPA to give a SIPA trustee less authority than a bankruptcy trustee. So the standard should be the same as under the Bankruptcy Code. With regard to the pleading burden, the same point is dispositive, but there's even more. The District Court acknowledged that good faith is an affirmative defense. Under Federal Rule of Civil Procedure 8C, consistent Supreme Court case law and consistent Second Circuit case law, it follows that the plaintiff has no burden to negate the defense in a complaint and no additional analysis is necessary. So I'll turn to defendants' quite different arguments on appeal. Actually, first, can you help me with just sort of an initial thing? I understand that this is kind of the premise of a lot of this litigation, that we should think of this as a fraudulent transfer. I guess the trouble that I'm having, and maybe you can explain to me why we should think of it that way, is that this is money that is going to a creditor of Bernie Madoff Securities, right? So it's usually a fraudulent transfer. The debtor is hiding money so that the creditors can't get to it. It's not paying off some creditor first. So why shouldn't we think of this more like a preferential transfer rather than a fraudulent transfer? Why is that the right framework to think about it? Well, Your Honor, in Ponzi scheme cases, trustees regularly use both preference and fraudulent transfer theory. I understand that that is a thing. But everything Bernie Madoff did was false. Everything Bernie Madoff did was false. Every transfer he made to anybody was with the intent to hinder, alter, or delay. And the Ponzi scheme presumption is well established in the case law, not contested here. And these 548A1A cases have been going forward for more than a decade under that statute. But what that is, when we talk about good faith, a lot of the good faith cases say that you need to show something more so that it's not simply a preference. It really is a fraudulent transfer. So this kind of analysis, if you sort of think it looks like a preference would still be relevant to the good faith analysis, wouldn't it be? Don't you have to show something more than a preference for one creditor over another? Your Honor, I'm not familiar with any case that says the good faith defense in 548C or 550 is different than the good faith defenses in fraudulent transfer cases generally. The comparison to preference is not unique. But in those cases, good faith is about establishing more than a preference for one creditor. It's about establishing involvement in the fraudulent scheme. Not involvement, Your Honor. That's the standard. Remember, in any fraudulent transfer case, the relevant intent is the transferor's bad intent, not the transferee. Good faith is the defense that Congress has created as an act of legislative grace, not to say that everyone who isn't equally culpable gets to keep the money, but to say that if an affirmative showing can be made, they get to keep the money. And again, at least five circuits have said, and this Court has assumed in dicta, the standard is, was the party asserting good faith on inquiry notice? And if so, did it conduct a diligent investigation? That's the standard for which we advocate. Can I ask you something about the inquiry notice? So on good faith, you say in your reply brief that we should look to the UCC's definition of good faith, which is honesty in fact and the observance of reasonable commercial standards of fair dealing, right? Not quite, Your Honor. We don't say affirmatively you should look to the UCC standard. The relevant state law is the Uniform Fraudulent Transfer Act, Uniform Voidable Transfers Act. But what we do say, Your Honor, is that the other side's arguments from the UCC don't undermine our position. Well, I guess what just struck me is in 1978, when the bankruptcy code was adopted, the UCC did not have that language, that observance of reasonable commercial standards of fair dealing. It defined good faith just to mean honesty in fact, only the subjective component and not the objective component. And I'm asking if we're interpreting the bankruptcy code, is it probative that at the time the bankruptcy code was adopted, good faith was understood to be only a subjective standard? I disagree with your premise, Your Honor, but I'll say it's not probative. But there's case law on this subject since 1571 in England and the United States since the Statute of Elizabeth. And the Uniform Fraudulent Transfers Act, which is precisely parallel to the provisions of the bankruptcy code that we're discussing today, has a good faith defense, well-advocated by the Fifth Circuit and by Justice Busby for a unanimous Supreme Court of Texas in recent opinions in the Alan Stanford Ponzi scheme case. And it has been understood for decades. Aren't there some leading cases about the good faith presumption, like Boston Trading or like Sharp, where the courts say to show a lack of good faith, it has to be more than knowledge of the fraudulent source of the money? Like in those cases, didn't the transferee know that there was a fraudulent scheme underway and the courts conclude, well, because mere knowledge is not enough. You need to show something more for a lack of good faith. If I'm recalling those cases correctly, they are 549C cases, not 548C cases. And there is a different analysis in cases involving preferences and postpetition transfers. But the body of law on the 548C and 550B defenses to fraudulent transfers is absolutely uniform. Every single circuit that has addressed it has said it's inquiry notice. Judge Bernstein said it's inquiry notice. Judge Rakoff said it's inquiry notice. In the Bayou Holdings case, which has gotten a lot of attention, Judge Gardefee and bankruptcy judge Hardin disagreed on a lot of things, but they completely agreed with each other that the standard is inquiry notice. Mr. Engelhoff, I apologize. Finish your thought and then I'll ask your question. Go ahead. It's fine. Nothing more, Judge Wesley. Go ahead. Mr. Engelhoff, then, give us what, in your view, should be the definition of good faith. A good faith is absent when a party is on inquiry notice but does not conduct a diligent investigation. An inquiry notice means awareness of circumstances that would cause a reasonable person in the defendant's industry to investigate. An actual awareness or an objective awareness? Knowing or should have known? Your Honor, there's a divergence in the case law on that point. That's where the rubber meets the road, isn't it? Not for purposes of today's appeal. Okay. Tell me why. The court below rejected inquiry notice altogether. Right. And also, in the cases, on the facts of the Citibank and legacy cases, our complaint is entirely premised on what they did know and their lack of diligent investigation, not what they should have known. Does the rubber meet the road there in some other cases? Yes, but not, I would respectfully submit in this appeal, Judge Wesley. Okay. Because of the knowledge of Gross and the advocacy of Mr. Marcolos, et cetera? Well, with regard to Mr. Marcolos, it's not so much what he had to say as what Leon Gross of Citibank had to say. I mentioned Mr. Gross. Maybe you didn't hear me. Mr. Gross is the fellow who really begins to put some of the pieces together about Mr. Madoff's scheme, right? Absolutely. Yes. All right. Okay. Thank you. What they were supposed to do, like, let's say, so if somebody is on inquiry notice or they're on notice to the extent that they should understand that something fishy is going on, were they supposed to not take their money out? I mean, so isn't that what the good faith standard is about, that if you are on adequate notice or have knowledge, you shouldn't participate in the fraudulent transfer? So the proper conduct would have been to leave the money in? No, the proper conduct would have been to conduct a diligent inquiry, find out that Bernie Madoff was committing a massive fraud and alert the authorities. It's not a question of leaving it. It's a question of whether if you did take it, whether it's reachable, right? Exactly right. Okay. All right. If I may, I'll turn it over to Mr. Kelly and reserve the remainder of my time for rebuttal. That's fine. Mr. Kelly, you may proceed. May it please the Court. My name is Nathaniel Kelly, representing the Securities Investor Protection Corporation. There is no dispute among the parties that CIFA was designed to augment the pool of money available for investors of a failed brokerage firm. But the decisions below, if left to stand, would hamstring any CIFA trustee's efforts to recover stolen money and return it to investors in accordance with non-controversial bankruptcy policies. The rationale of the lower courts that a CIFA trustee's recovery efforts must be viewed through the lens of securities laws, imposing a higher standard and burden of good faith, is first misguided and, second, harmful to investors. While CIFA is codified under Title 15 and is treated as an amendment to the Securities Exchange Act, that codification stems from CIFA's design to improve broker-dealer financial responsibility. It provided for the enactment of rules that lessen the possibility that a firm will fail and that protect the custody of customer property in the event of a failure. But once a firm does fail and a CIFA trustee is appointed, as courts across this country, including this court, have recognized, a CIFA case is essentially a bankruptcy case. And a CIFA trustee has all the powers and duties, without limitation, of an ordinary bankruptcy trustee, along with additional powers. Can I ask you a textual question about the good faith standard? So in 550, it says that the trustee can't recover from a transferee who acted in good faith and without knowledge. Doesn't that suggest that good faith is something other than knowledge or that it's possible for one to act in good faith with knowledge because it requires both good faith and lack of knowledge? Yes, Your Honor. We do believe that there is an argument that having two separate elements for good faith and knowledge means that good faith falls somewhere short of having actual knowledge. Right. And so isn't inquiry notice, isn't that much less than knowledge? So if good faith, if you can have good faith and have knowledge, you could also have good faith and be on inquiry notice, right? Your Honor, I would argue the opposite, that you can have knowledge of, you can be on inquiry notice and yet not rise to the level of knowledge. So if good faith and knowledge are two separate requirements, you have to act in good faith and be without knowledge separately, then it means it's possible to act in good faith even if you have knowledge because then you wouldn't separate the other one. But if inquiry notice is something less than knowledge, how can you lack good faith if you're on inquiry notice? Because that would mean whenever you have knowledge, you would be acting in bad faith, right? Yes, Your Honor. I do believe that if you are acting in, if you have knowledge of the void availability of transfer, it would be difficult to argue that you are acting in good faith as well. The cases are understandably… I guess my question is since they're two separate requirements, it's possible to have good faith and also to have knowledge. They're two separate requirements. Yes, Your Honor. There is some dispute in the case law, though, with some cases finding that the elements are equivocal, that they are essentially asking the same thing. But to the extent that there is a difference, I believe it cuts in favor of an inquiry notice standard that good faith… How can it be? How can it be? If knowledge is a totally separate thing and it's possible to have good faith even if you're fully aware of the void ability of the transfer, inquiry notice is something less than full awareness of the void ability of the transfer. So it's possible to have good faith while having full knowledge. Why wouldn't it be possible to have good faith while having inquiry notice awareness? Because, Your Honor, the inquiry notice asks whether or not it would have been reasonable for you to proceed with the knowledge that you would be basically stepping in front of the line of other creditors who are equally defrauded. And so that falls short of a good faith understanding, then, that if you're not… that you should have investigated more. Okay. Can I ask just a question about the affirmative defense argument? So we have good faith in Section 548 and then we have good faith again in Section 550. The way it's written in 548 is as an exception to when a transfer is voidable, right? But then in 550, it's written in terms of the trustee's power, right? So in 548, it says it's voidable except to the extent that there's this good faith. And in 550, it says the trustee may not recover from somebody who acted in good faith. And these two provisions apply to different classes of transferees, right? So 548 would apply to the initial transferee, but 550 would only apply to a subsequent transferee, right? So since one is written as an exception and one is written in terms of the power of the trustee, why wouldn't it be reasonable to understand the good faith exception in 548 as an affirmative defense, but the 550 as part of the case that the trustee needs to make out when he's trying to recover the funds? Your Honor, as numerous courts have found, despite the minor difference in the wording, the overall structure of the two statutes, and this includes Judge Rakoff in the district court, he recognized that the overall structure of the two statutes shows that it is still an affirmative defense. That the elements of the action are in 548A1A in this case, and then 550A. And then it's an affirmative defense established in the good faith sections, 548C and 550B. Yeah, I understand. The reason why we treat it as an affirmative defense in 548C is because it's an exception, right? It's an exception to the general power of the trustee. That's usually what we think indicates an affirmative defense, but 550 is not written that way. And so I guess my question is, since they're written in different ways and they apply to different classes of transferees, why would it be reasonable to understand them differently? Because, Your Honor, you would still need to look to the general pleading burden. That a good faith is within the exclusive knowledge of the transferee, and under standard pleading burdens, the transferee then would be the one that would bear the burden of asserting that. Okay. I see my time is over. If I could just make one additional point. Okay. One additional point. Fine. Just to finalize, though, that the SIPA is not a securities fraud statute, and it should not be compared to one. It was not designed to create liability for securities fraud, and it wasn't even designed to protect against securities fraud generally. It was designed to protect against the loss of customer property entrusted to brokerage firms, including through the use of the Bankruptcy Code's fraudulent transfer provisions to recover that customer property. Thank you. All right. Thank you, Mr. Kelly. We'll now hear from Mr. Boccuzzi. Did I say that right? Boccuzzi, I think you're muted. Still muted. Every lawyer's nightmare. There you go. Sorry. Sorry, Your Honors. Good morning. Carmine Boccuzzi from Cleary Gottlieb on behalf of the defendant at Pelley's Citibank and Citicorp. The Bankruptcy Court was correct in denying the trustee leave to amend and in dismissing the claims against Citibank and Citicorp. I want to start with the standard. The Bankruptcy Court, following the District Court, applied the willful blindness standard, and we think this was correct, both as a matter of the Bankruptcy Code and particularly in light of the case, the fact that this is a case proceeding under the SIPA statute. If we start with the words good faith, those are words of subjectivity. And so the subjective standard is clearly the right one. And that is a through line that runs through all of the cases, whether the very old cases that we cited in our brief on Eiderstein, which was a case from the Second Circuit that went to the Supreme Court and was affirmed. Through more recent cases, there is always a training on the transferees' subjective knowledge of what they were receiving. Even the Naves case, which is the Fourth Circuit case that my opponent referred to. Well, subjective knowledge doesn't mean willful blindness necessarily, right? No, it gets us. I guess there are a couple of steps here. Are we talking about subjective versus objective? And then what's the right standard once you get there? But even in the subjective cases that we're talking about and the bankruptcy side, there's a constant refrain in these cases about what the defendant, the transferee, actually knew and whether, if they knew facts, they consciously avoided seeking the truth. And so all that tracks to the standard of willful blindness that the district court and the bankruptcy court applied. In terms of the objective standard, I think, Judge Wesley, you made an important point in terms of is it new or should have known. And the trustee in his briefing goes back and forth. It sometimes says, no, this is just about what the transferee actually knew. And did they then put their head in the sand? But then they also say should have known. The should have known standard is a complete add on from the Ninth Circuit case. But the problem is when you're speaking kind of generically here, that's all well and good. But when you get into the messiness of life, the facts become sometimes difficult to sort out because you'll have a case where someone says, well, I didn't know. But the proof is so overwhelming that you should have known. Is the subjective standard a safe harbor for where the facts are so obvious that to say you didn't know is not believable? A safe harbor in terms of just saying, well, I didn't know. I didn't know. I didn't read the front page of The New York Times the last 10 days. I didn't know that the report from Mr. Gross was on my desk, but I did read it telling me that collectively Madoff's had, if he was right about the number of options that he was doing, was more than the entire market. That the prices that Madoff's statements show were completely inconsistent with the actual prices of options in the market, the kinds of things that Gross was going to. Can someone who had that information delivered to them from Gross say, I didn't know? To be clear, Mr. Gross did not create such a report. I didn't say he did. I gave you a hypothetical. We're trying to talk about a standard here, and I'm trying to figure out how close you're going to hue to subjective if there are objective facts that clearly run contrary to the subjective standard. Understood. So if Mr. Gross, actually, someone wants to answer the hypothetical, Your Honor. If Mr. Gross clearly had facts that he knew, not should have known, and then consciously avoided or willfully blinded himself to looking further, that's the willful blindness standard. So it doesn't protect the person who just sticks their head in the sand. So if Mr. Gross, in your hypothetical, actually was involved in this investment and was involved in this due diligence, which is a counterfactual hypothetical. But if he produced a report saying all those things, and then the other people with whom he worked who were responsible for this said, oh, we're not looking at that. Get that away from me. That's willful blindness that one finds in the securities fraud context that Judge Friendly wrote about. In the Rothman case, in the Roth case, it gets into the securities fraud. I don't get the analogy to securities fraud. This is bankruptcy. This isn't about misrepresentations of a value of a company or a material aspect of a company's value. This is about an investment and then someone in good faith withdrawing or getting their money out. And they getting their money, whereas thousands, maybe millions of other people don't and get less than dollar for dollar. So I'm really not impressed with the securities fraud analogy at all. But, Your Honor, we have to consider this is a SIPA proceeding, a SIPA statute in 70. SIPA, which is directed at protecting mom and pops who put their money in stock markets for their retirements and suddenly find out that their that their investment in Bernie Madoff securities is worth nothing. And these these investors, these customers under the trustee standard would be held to a should have known and to the extent they had gotten any of their money out. So it wouldn't protect them. Seventy eight BBB makes very clear the SIPA is a part of the Exchange Act is considered part of the Exchange Act. And that's why the security and the extent to the extent that the Exchange Act is inconsistent with SIPA SIPA determines, doesn't it? SIPA and the exchange to the extent that the Exchange Act to the extent that the Exchange Act is inconsistent with SIPA SIPA determines, doesn't it? I don't believe so, Your Honor. I think you're referring to the language that Judge Rakoff relied on where it says except as otherwise provided in this chapter. Is that right? Yes. But now, of course, that that language does not appear in the statute that Congress passed. Right. That's in the U.S. Code. But the statute that Congress passed says except as otherwise provided in this act. Right. The law passed by Congress said that. And so then I understand the Office of Law Revision Council alters that language when they write it up into the U.S. Code. But the Office of Law Revision Council is not is not does not exercise the powers of Congress. Right. Right. Correct. So the proper language that we're supposed to be focused on is except as otherwise provided in this act. And doesn't the stamp the title and in fact, the statute passed by Congress also says this act may be cited as the Securities Investor Protection Act of 1970. So when it says except as otherwise provided in this act, it means except as otherwise provided in SIPA. But then it goes on and says the provisions of the references, the Exchange Act applying as if this chapter constituted an amendment to and was included in the Exchange Act. Can I ask you just a quick question? I understand that it might not be contested, but I'd kind of like to get your reaction to the question I asked opposing counsel, which is I think part of the problem that Judge Rakoff had was look at the facts of this case that this case. And it looked like it was just somebody withdrawing their own investment from the firm. And so do you agree with the Ponzi scheme presumption? Is this fraudulent transfer the way to think about these or does it look more like a preferential transfer? In the context, we're not challenging the application of the Ponzi scheme presumption. That's the presumption that made office transfer when he was making these transfers. I understand the intent to hinder delay into fraud. And then it goes to the customer. And where we're, of course, one level removed from that. But I think what's important here, because you're right, for the for the customer getting it out in the SIPA context, SIPA was established to give confidence in the broker dealer industry to protect investors and not to second guess when they withdrew securities or cash that then that would be challenged. All these actions start and you'll hear from Mr. Fisher with the trustee going after these customers, the purported folks who are being protected by the statute. So that further counsels. If you've ever said we should treat this as a fraudulent transfer rather than a preferential transfer, then maybe something that looks like an innocence transfer under normal bankruptcy principles under the Ponzi scheme presumption, we shouldn't we shouldn't extend the same understanding. Well, but that's why you have to look to the good faith defense and understand. And that's why you look to the bankruptcy case law. But I think, Judge Wesley, the Exchange Act standards are relevant because SIPA is part of the Exchange Act. And there's no liability creating provision under the Exchange Act that goes for a negligent standard. You need some level of culpability. And that doesn't contradict that, in fact, dovetails with what you find in these bankruptcy cases that we've cited, which always train on the subjective knowledge of the transferee. I just have a reaction to my two other questions about the good faith, the good faith point. One is that since 550 says good faith and without knowledge, that good faith has to be something different than knowledge because it's possible to have good faith, even if you have full knowledge. So it suggests that it would be possible to have good faith even if you're on inquiry notice. And then the other point about the affirmative defenses. Sure. On the knowledge of the void ability to transfer, the transfer to be avoided, that talks about, in this case, did you as a secondary transferee act in good faith when you received the money you got from the initial transfer? And then the second one is knowledge of the void ability to transfer. Did you know anything about the original transfer from Madoff to that first person? And here they don't claim, they don't rely on that provision. And so and in fact, we thought we were taken out by another lender. There's no allegation in the complaint that we even thought we were getting money that was sourced to Madoff at some point in the chain. So you think that the knowledge that's referenced in 550 is a different knowledge than knowledge of the fraudulent nature of the transfer? No, it's knowledge of the void ability of the first transfer. Isn't that the knowledge that the trustee is arguing you were on inquiry notice of? I guess it is. I guess it is. So if under 550, those are two different requirements, then how can we read it into good faith? So if he would have to show that you acted in that you didn't act in good faith and also that you have knowledge of the transfer. Why could being on inquiry notice, which is something lesser than knowledge, suffice for the good faith showing? I think good faith has two concepts. It's honesty in fact. And it's also not acting dishonestly or unfairly. And the J. Walter Thompson case, this court and looking at UC under the good faith. I'm sorry. Good faith under the UCC said that the good faith standard there does not impose a standard of care, but it's a standard of fair dealing. And so I think good faith brings in those extra parts, components, in addition to actual knowledge. But again, it's the subject of inquiry. I understand that point. I guess I just wanted also your reaction to this idea that that 548 good faith looks like an affirmative defense because it's an exception to the trustees general powers. But 550 seems to be the circumstances under which the trustee may recover. Could we read those two things differently? I think 550 A and B are definitely about the trustee's power and that he needs to plead that the transfer he is going after is one that he's able to go after, i.e. was bad faith. It is not an affirmative defense. All that language is part of the grant of the power to the trustee versus how 548 C is structured, where it doesn't even say the transfer is unavoided if there's good faith. It says you get a lien in it. And so the and the trustee, whenever he talks about he mushes them together as if they're written the same way. But they're clearly different structures, and it's clear that he's got the burden to plead. And that's supported by the fact that we cited cases in our brief at 50 and 51 that says ultimately he's got the burden of proof on this issue. And usually the person who's got the burden of proof here on bad faith would have the burden to plead it to begin with. And the Meacham case that they rely on further shows the point, because in that case, it was under the age discrimination law. The Supreme Court said this is an affirmative defense because what we're talking about is otherwise prohibited age discrimination. And you're you're giving an excuse. The statute gives you that's an affirmative defense here. There is nothing illegal about receiving a transfer from an initial transferee unless it's in bad faith. And so given that, he needs to plead that as an element if he's going to proceed with this case. Well, let me just say it is also true of the initial transferee. It's not it's not avoidable unless it's in bad faith. Right now, it says if you look at 548 C. It says that you're saying because they have a lien or may retain any interest transferred or may enforce any obligation. Third, it's just it gives the transferee some rights, whereas in 550, it actually blocks the trustee's power. Correct. OK, I get that point. Correct. Which makes them totally different. But this is also important, again, to go back to the SIPA context, because all of these customers, if you think about it, SIPA was enacted again to give customers of collapsed broker dealers access to insurance for lost cash or securities. Insurance covers. You get it when there's negligence. And so to say we're going to impose an objective standard of care means you're not going to give people insurance when they most need it. But willful the willful blindness standard ties completely into that because you can't ensure willful misconduct and you can't benefit from that. But on Citibank side, we made a loan. We made a loan to an entity. The one thing we knew was what everybody else knew in the world about Madoff was that he self-custodied and that created a remote risk of fraud. And so when that fraud turned out to be what happened, that didn't mean that we will willfully blind. We had meetings. We did due diligence. We didn't ferret out the truth. But no one ferreted out the truth in this Ponzi scheme. And this court has decided case after case in which what you've said, the most plausible inference from all that is that all these people were fooled. The SEC didn't figure this out. But this is an argument. That's really a defense. This is a defense that you could make if the case were to go forward. But but we're talking about the dismissal of the complaint. That's true. But we're just talking about the fairness here and what what we're involved with, talking about an attempt to impose civil liability based on the claim that we knew something. And what I'm saying is that these allegations and maybe I'm swapping into point three of our brief were rightfully rejected by the bankruptcy court because there was no pleading of actual knowledge on our part of information that would raise that strong probability of a fraud. And to the extent he says, well, you knew about the self-custody. Everybody knew about that. And in terms of Leon Gross, I know he was mentioned before Judge Wesley. He didn't do an analysis. The trustee acknowledged that he had one phone call with Harry Markopoulos in which he thought about things. And he said either he's a really great stock picker or he's not following the strategy. And he didn't write a report and he didn't do anything quantifiable. And in fact, and importantly for city's decision making, he did not work on this loan. And the only last point I made, I know I've run over, is that I'm sorry, but in the value case, didn't the transferee actually conduct an investigation and that still wasn't enough? So like if that standard were to apply, then you wouldn't have defense by saying that, well, we didn't do that much of an investigation. Well, I mean, I think Leon Gross raised a separate issue that he wasn't even working on this deal. So you're punishing Citibank for having 300,000 employees who might hear something. So in the case law, we've cited cases in our briefs that you can't attribute to the corporation knowledge by someone who is not acting in their duties. But putting that aside, I've lost my point. I'm sorry. I would say that in the Bayou case, there actually was an investigation by the transferee. And so you're saying, well, we only had a limited investigation. But if we were operating under a standard in which a full investigation isn't even enough, then that's not really a defense. Right. But that's that's even further dangerous with the objective standard, because then you're going to get into these hypothetical thinking about what was the right investigation here, what needed to be done. And you require us to say that Bayou was wrong. Well, well, Bayou in the in the district court case, the judge required actual some actual knowledge. And but then he said, if the the investigation would not have found the answer, then there could be excuse. But again, that just that just creates a whole string of hypotheticals to figure out. So I think to the extent there was that objective piece of Bayou, I think it was wrong. All right. Thank you. So we're now going to hear from Mr. Fisher for five minutes, maybe. So go ahead, Mr. Fisher. Thank you, Your Honor. May it please the court. Eric Fisher for Legacy Capital and Kronos LLC. I want to bring us back to first principles, because in this case, I represent Legacy Capital, which was a customer of Madoff's. Legacy Capital was a customer of a registered broker dealer from whom the trustee seeks to recover principal amounts that Legacy withdrew from its customer account. It's important to realize that this is not a net profits case. Legacy already has a judgment against it for all of its net profits. The trustee says that his main goal should be to treat Madoff's customers equally. We agree. Really, the question in this case is whether the trustee has met a standard that's sufficient to treat Legacy unequally, because Legacy would be the rare customer who's not allowed to retain the cash balance, the principal amount that it invested in in Madoff. This court recognized in the New Time Security Services decision that the core purpose of SIPA is to instill customer confidence in the broker dealers with whom they hold accounts, not to impose responsibilities of customer vigilance and investigation. And I want to return to the Picard v. Gettinger case that was cited by Mr. Engler in his argument, because I think it's very helpful and instructive. It's a September 2020 decision of this court in the Madoff case. And I think there's a way in which this court might view it as a companion case to this appeal, because in Picard v. Gettinger, the question arose under 548C as to what the definition of value should be. And this court explained that the definition of value in a SIPA case under the bankruptcy code may differ from what value looks like in a more typical bankruptcy case. And that's because of this idea of customer property. And this court said, quote, that SIPA and the bankruptcy code need to be put together to produce a system that functions as intended. That is exactly what Judge Rakoff did here. Before the good faith decision that is part of the special appendix, Judge Rakoff issued a good faith decision in 2011 in Picard v. Cass. And there, he didn't describe what he was doing as one statute yielding to the other statute. He understood that what he was doing was recognizing, quote, that the bankruptcy law is informed by securities law, close quote. He was harmonizing. He was not having one statute trump the other. And we respectfully submit that the subjective willful blindness standard is the best way to harmonize SIPA's goal of instilling investor confidence with the trustee's avoidance powers under the bankruptcy code. Why do we modify the bankruptcy code with the securities law? What gives us the authority to do that? I mean, if SIPA just says, if it's avoidable pursuant to the bankruptcy code, it seems to call just for an application of the bankruptcy code, doesn't it? Your Honor, I think what's really critical here is that there is no conflict. The bankruptcy code says good faith, and it does not define good faith. I think as this panel has already seen, the definitions of good faith vary widely. Even courts that say they're using objective standard end up incorporating subjective elements. And there's cases that say that the more reflective approach would be a subjective approach. And so I don't think we have a conflict between the securities laws and the bankruptcy code. I think there is a way here to interpret the bankruptcy code use of the phrase good faith in a way that is more consonant, ultimately, with the goals of SIPA, and that is entirely faithful to the text of the bankruptcy code itself. That's what this court did. I guess I'm not sure. I thought you were arguing that SIPA or the securities laws somehow modify the standards we should apply in the bankruptcy code. But now it sounds to me like they're making a different argument. So I guess I'll just ask this question. If I did not agree with you that we should modify the bankruptcy code, or if we just had a bankruptcy case, if this were just a bankruptcy case, would you still argue that good faith means the same thing that you're arguing it means in this case? No, I think, Your Honor, Judge Rakoff was very clear that this is a rule that makes sense in a SIPA case. I'm sorry, Judge Sullivan. No, I interrupted you. I'm sorry. Well, Your Honor, Judge Menashe, you asked about the Bayou case. You're saying it makes sense in a SIPA case, but you seem to be acknowledging it wouldn't make sense in a bankruptcy case. Is that right? No, Your Honor, every court to really wrestle with the question of good faith has said that it would be unwise to assign it a single definition. I think that there's an opportunity here for the court to clarify what the standard ought to be in a SIPA case in a way that is consistent with the goals of SIPA. And I don't even think the court needs to look broadly at securities fraud issues. Oh, I see. So I guess maybe your argument is this. It's that good faith under the bankruptcy code is always the context and fact-dependent inquiry. And it just so happens that here we have a SIPA case. But in a bankruptcy case, we would still look at the circumstances around the particular transaction. Is that your argument? I think that I'm really not opining about what the standard ought to be in a case that is not a SIPA case. I'm advocating for this standard as the best reading of the bankruptcy code, consistent with what this court did in Picard v. Gettinger as a way to harmonize. Let me just put it this way. If I'm concerned that I'm not sure we have the authority to modify the bankruptcy code by what we think the purpose of SIPA or the securities laws are, I'm looking for some argument that would give me confidence that the decision we would be applying here, if we were to agree with you, is consistent with the way we would apply the bankruptcy code by itself. So, Your Honor, I defer to Mr. Bacuzzi's arguments about why the securities laws should prevail if there's a conflict. But there is no conflict. And so this court is not being asked in any way to override any word in the bankruptcy code. I think what you're saying, Mr. Fisher, is in a pretty stark contrast with Bayou. Am I misreading Bayou? No. In Bayou, the court adopted an objective standard, a new or should have known standard. It was not a SIPA case. I think that's critical. I don't think that there's a... No, no, no. But you said a minute ago that good faith means the same thing throughout the bankruptcy code and SIPA. There's no difference. And so I don't... That's a great line, but it seems to me to be inconsistent. That happened as in other cases. So, Your Honor, let me try to be more precise. The bankruptcy code uses the phrase good faith for my purposes in 548C. That's what's relevant to the legacy appeal. It does not define good faith. There is ample history in the UCC and in other sources of law to interpret good faith as imposing a subjective standard. And there are bankruptcy cases that apply a subjective standard. And in the Seventh Circuit, Judge Easterbrook applied a subjective standard when interpreting the bankruptcy code good faith provision. And what I'm saying is that really the only way to interpret good faith in a way that best realizes the investor confidence goal of SIPA is to interpret it subjectively. It is a way to thread the needle, Your Honor. It is a way to understand good faith that's consistent with both statutes. I mean, that might be a good policy argument, but it seems to me that Bayou is talking about reasonable transferees, isn't it? Bayou, Your Honor, is a hedge fund fraud case. It's not dealing with a regulated broker dealer that has customers. To illustrate the point. It's dealing with good faith. Yes, yes. It is at odds. It is different from the standard that Judge Rakoff adopted and that Judge Bernstein applied in this case. Absolutely. It is a different standard. And I'm saying it is a different standard because it is not a SIPA case. Because the court there was not wrestling with the fact that customers of SIPA broker dealers do not have any duty to investigate. To illustrate the point and to come back to Judge Wesley's point about SIPA being there to protect mom and pop customers. If this court were to adopt essentially the negligence standard, the newer should have known standard that the trustee urges, then after the fact, the trustee could point to every single customer that took principal amounts out of their Madoff accounts and say, you should have known it was a fraud because you know that those statements didn't have the same level of transparency as your Schwab statements. Wait a second. Might that be different between someone like Citibank or Citicorp and you and the retired secretary at Livonia Central School? I mean, there are varying levels of sophistication. What Citicorp was able to sit down and meet with Bernie Madoff, Citicorp was pursuing due diligence on a regular basis. Your clients farmed out due diligence to a firm that they owned and the allegations of the complaint are. And you cook the books. You controlled the question. I'm saying what the complaint says. You control the information. You didn't look. You didn't want to look. That's the complaint says. I'm not saying it's true or not. But so there's substantially different people. Why? Why? Why? Why are they in the same boat? So, Your Honor, I don't want to get into the record. I don't think the complaint that there was any cooking of the books. But I said that's what the complaint said. So just relax and just answer my question. Of course, Your Honor. I mean, I don't think that the complaint talks about about cooking books. But what a customer. If you take the trustee at face value, if you actually adopt what the trustee is asking this court to adopt, then. And I'm putting together the two parts now. Burden and the good faith standard. The trustee could sue, could have sued every single Madoff customer for every dollar they took out of their account. And he could say, oh, it's your burden to prove good faith. And he could say, you should have known it was a fraud because Madoff had an accounting firm that consisted of two people operating out of a strip mall. And you should have known it was a fraud because your returns were so consistent. That would be and could have, I suppose. But it'd be totally foolhardy for people who are totally unsophisticated investors. But but but there were another group of people. There were banks that were leveraging hundreds of millions of dollars that were then invested into the Madoff fund. There were very sophisticated investors that were managing theater funds. There were there were a number of players at the table with varying levels of sophistication and knowledge of what they were up to. Aren't they held to their level of sophistication as to what they knew or should have done? Your Honor, I know I'm speaking for a customer, a customer of Madoff, who in 2003 got some information that caused them to scratch their heads. And then they stayed invested for five years thereafter because there was no way to know that Madoff was was operating. I'm not I'm not I'm not I'm not opining on whether that was good or bad for them or whether they knew or should have known. But we're trying to figure out a standard here. And you're saying that that they're all the same. The the the very sophisticated fund manager that funnels funnels millions of dollars into Bernie Madoff securities and the mom and pop individual investor are the same person. I'm saying I don't I have a hard time buying that. Your Honor, I'm not I'm not saying that they're the same. The willful blindness standard actually would sort that out, because to get to a point that your honor asked about earlier, the willful blindness standard doesn't let people, you know, act like ostriches and put their head in the sand. And if you're sophisticated and the trustee pleads to meet his burden of lack of good faith, he's going to be able to show, you know, you're you're you're sophisticated. You you have these tools when confronted with this with this information. You knew what was going on and you look the other way. That I do think. Can I. Mr. Because he said something right at the end of his of his argument that intrigues me. What in the what how does the coverage for investors who seek to make claims against the fund, how does that inform the good faith definition? So I think I think Mr. Bacuzzi mentioned that to show that it doesn't make sense to make people forfeit the price of their investment on a negligent standard, which really is what the standard is that the trustee is urging here. It doesn't make sense in the SIPA context because it's inconsistent with SIPA. And explain why. Because insurance is supposed to cover negligent behavior. Investors who had money made off, but were scratching their heads and then didn't do anything and just left their money in there. At worst, they were negligent. Even mom and pops might have said, maybe this is too good to be true. The trustee wants to impose duties. The trustee wants a mom and pop to trigger a duty to investigate their made off account when they come across some something that makes them scratch their heads. And that's inconsistent with the entire SIPA regime. OK, thank you. So if you saw something going on with your investment, would the non-negligent course of action be to leave it invested? Well, that's your honor. I think that that's what really doesn't make sense about the trustee standard. Because if you envision an investor who comes across some information that makes that investor scratch their head and say, I wonder what made us up to something doesn't seem quite right. And then they say, I'm uncomfortable with this. I'm going to take my money out. The trustee says, oh, well, there were facts that caused that where you knew or should have known that something wasn't right. And then you took your money out. I'm going to sue you for taking your money out. But meaning that you should have kept it in. Right. That's the way a fraudulent transfer would normally work, right? If like you are not acting in good faith, it means you're part of the fraudulent transfer to keep the money away from creditors. And so we say that you've done something culpable and we can you can be penalized for participating in the transfer. I guess this goes back to my original question about the Ponzi scheme presumption to begin with and whether this really looks like a fraudulent transfer. Like, what would we expect someone to do if they had noticed that there was something going on with the investment firm? Right. Your honor, I think the Ponzi scheme presumption has been applied here. We know with the benefit of hindsight and only with the benefit of hindsight that what Madoff was doing was paying people with other customers' money. But the transferees in this case had no culpability because they had no way to know. They had no inkling that what they were getting was someone else's money. And they never came across any facts that would have caused them to know that there were no securities being traded. If they had come across those facts, do you agree that what they should have done was leave their money in and contact the authorities? That would be what the non-negligent course of action would be. I think anyone who came across evidence that Madoff was running a Ponzi scheme in real time, not in hindsight, should have reported it to the authorities. If they knew it was a Ponzi scheme, that's right. But if they knew that something fishy was going on, I guess it's a different question. I think I get the argument. I see that I'm way over my time. I thank the panel for their indulgence. Okay. Thank you. I'll now hear from Mr. Englert for three minutes of rebuttal. Thank you, Judge Sullivan. Let me start where Mr. Fisher ended. We are not urging a negligence standard. The inquiry notice standard that we're urging is context-specific to the industry in which the defendant operates. This has been established law since the Fourth Circuit's decision in Ingram-Yabes, which is cited throughout the briefs. And that's the standard for which we advocate. New or should have known is not before this court on appeal. As I said in my earlier colloquy before Judge Wesley, all the policy arguments based on whether it was new or should have known really have nothing to do with whether the standard is the inquiry notice standard that is stated throughout bankruptcy cases. In the Van Eiderstein case that my friend Mr. Facuzzi brought up, the decision of this court— You just acknowledged that it's context-specific. So does that provide some room for what opposing counsel just suggested that we should look at the particular context that this is a SIPA case and that they are investors in an investment firm taking out their own investments? And maybe that means that the kind of inquiry or the kind of investigation we would expect would be different in these circumstances than maybe a different type of fraudulent transfer case. All of that is relevant under the inquiry notice standard. All of it. And when this case gets to trial, if it gets that far, we can have debates about those points. But in terms of setting the legal standard, the legal standard is established in its inquiry notice. And indeed, in 1909, this court in Van Eiderstein, which my friend Mr. Facuzzi cited, said that the knowledge the transferee had was not enough to put it on inquiry. The court announced the inquiry notice standard 112 years ago under a prior statute. With regard to the structure and wording of 548 and 550, first of all, 548 is the avoidance provision. And 550 is the recovery provision, not just for 548, but for all of the avoidance provisions in Chapter 5. As Judge Wesley's opinion for the court in the extraterritoriality case pointed out, 550 is a tracing provision. It's not a provision that tries to find people who are at fault. The fault is established by 548 when the transfer is avoided. The defense provided in 548C and 550B is for those who take or value without knowledge and in good faith. Now, with regard to some questions Judge Manasci asked about without knowledge and good faith being separate standards, first of all, I wholeheartedly agree with Mr. Kelly that that distinction, if it matters, cuts in favor of our position. You can't have willful blindness, which, as Justice Alito's opinion for the court in Global Tech pointed out, is tantamount to knowledge. You can't have that be the standard because it would be redundant with knowledge. But the point that maybe good faith is broad enough that it encompasses all cases of knowledge was, again, addressed by the Fourth Circuit in the Nieves case, 648F3rd and 240. And the court acknowledged the point that we don't ordinarily construe statutes to contain surpluses. But it said we really have no choice in this case. And, in fact, the legislative history says that Congress was using a belt-and-suspenders approach. You were talking about Van Eiderstein that you just quoted. Isn't that – in that case, didn't the Supreme Court say that a transfer isn't a fraudulent conveyance just because the transferee knew that the money was to be used to pay an existing debt? And they said that it can't be held liable for a fraudulent transfer where it had no knowledge of any intent to defraud, right? So isn't the court applying a knowledge standard? Why are you saying that that's like an inquiry notice standard? Because the inquiry notice standard depends on knowledge. It at least depends on what the transferee knew. Arguably, it does. Arguably, it doesn't depend on what the transferee should have known. But there is a knowledge step to the inquiry notice standard. Did your knowledge put you on inquiry, which is exactly the words this court used in the opinion of the Supreme Court. These are cases about fraudulent transfer from the Supreme Court. They talk about fraudulent conveyances as malum in se because it's a bad act. It's distinct from other provisions of the bankruptcy law. I mean are we – wouldn't we normally have to find that somebody who's guilty of participating in a fraudulent conveyance did something culpable? The culpability is Bernie Madoff's. And again, I can't emphasize strongly enough that the way the bankruptcy code is written and the way the statute of Elizabeth was written in 1571, the way the Uniform Fraudulent Transfer Act is written, culpability is the transferor's. The transferee is given a defense. The transferee doesn't have to be culpable. Congress as an act of legislative grace has given certain degrees of defense. Somebody who receives a preferential transfer is not culpable, but the Supreme Court definitely has said that someone who was a transferee in a fraudulent transfer is culpable because that's malum in se. Like there's some parts of the bankruptcy code there is culpability and some parts there aren't. It is malum in se, as is everything Bernie Madoff did in this case. The intent that makes it malum in se is not the intent of the transferee in either a preference case or a fraudulent conveyance. If the transferee knew about the fraud and took the money anyway, it's because they were participating in the fraudulent transfer, and that's culpable. I'm sorry, Judge Menasche, I didn't understand. So I understand that Bernie Madoff did something culpable, but normally when we say that somebody participated in a fraudulent transfer with knowledge of the fraudulent nature of it and acted in bad faith, it's because they were participating in the fraud. They were participating in the fraud that defrauded the creditors who weren't going to have access to those funds. I mean, normally we would say that you are participating in the fraud if you take money under those circumstances, if you accept the transfer. That's the knowledge part of 550B. The good faith part, again, 550 is a tracing provision. 550 is not a provision that says— I thought you said a moment ago that the knowledge part and the good faith part are not two separate elements. What I said a few moments ago is that the Fourth Circuit concluded that all cases of knowledge are also cases of lacking bad faith and that the two elements are to that extent redundant. But what I also said was if there is a distinction, as Mr. Kelly said, it cuts in favor of the trustee because good faith has to be a much lesser standard than knowledge, and willful blindness is a knowledge standard. Okay. Let me just finish with a word about the goals of SIPA. SIPA kicks in only when a broker-dealer has committed a massive fraud and has to be put into liquidation. That's why a SIPA trustee is appointed. And the whole point of SIPA is to bring money back into the estate so that it can be equitably distributed to the people who are deserving. One hopes they will all be treated equally at the end of the day. But the bringing money back into the estate part is intended to be a tool as powerful as, if not more powerful than, the bankruptcy code to undo fraudulent transfers, bring money back into the estate. Let the defendants have their good faith defense, but it's still a defense. And those defendants whose money is called back can also, in some cases, be customers or, in some cases, have a general unsecured claim against the estate. So, again, the goal of SIPA, to superimpose an insurance scheme on top of the bankruptcy code to set up an estate and make it relatively easy compared to the bankruptcy code for the trustee to bring money back in, is best served not by having a higher standard than under the bankruptcy code, but having the same standard, which is what we advocate for, or arguably even a lower standard. But I do request that this Court not place itself in conflict with multiple other circuits on either of the questions presented and that it reverse, apply the inquiry notice standard and reverse on the burden of pleading. Thank you. All right. Thank you, Mr. Engler. Thank you, everyone. We went way over, but that wasn't a shock. And, obviously, this is an interesting and an important case. So we will reserve decision. We have one other matter, one other case that is on submission. That's Genova versus County of Nassau. We'll reserve on that as well. Before I adjourn court, let me just thank the Clerk of Court. Let me thank the staff who made this really run so smoothly today. It was just not quite as good as being there in person on the 17th floor. But I have to say, it was a very lively argument, and it sort of, at many points, felt like we were right there. So that's a tribute to them and the technology. So thanks. Ms. Rodriguez, you may adjourn court. Court stands adjourned.